Harper, Ch.
delivered the opinion of the court.
The questions made in this case relate to two portions or classes of property. The first is that contained in the deed of JohnP. Bond, of the 2d. August, 1823. I do not think it necessary to go into a consideration of the cases cited, with a view to the question, if there be a donation of property to several persons, with a limitation to survivors, in the event of the death of either without issue, if one dies and his portion is distributed among the survivors, and then a second dies, whether the proportion of property of the first, taken by survivorship by the second, goes over to the remaining survivors. It is conceded in argument, that the general rule is otherwise, and that the portion so taken becomes the absolute property of the survivor to whom it so accrues; though it is contended that the circumstances of each particular deed or case may lead to a different conclusion. This has been considered by the Chancellor who delivered the second decree in the original cause. There is no doubt but that if property be given to several persons jointly, by the English law, the property will vest in the surviving joint tenants successively, so that the whole may become vested in the last survivor, independently of any limitations to sm’vivors. If such liihitation be expressly inserted, it can, of course, make no difference.
The only circumstance relied upon in the present instance, is the introductory part of the deed, in which the grantor states himself to have given and granted to his four children therein named twelve negroes. I do not know if this is relied on as forming a qu asi joint tenancy. But he goes on in the body of the instrument to give- specific slaves to each, severally, as much so as if it were by several deeds. I suppose that a partition was hardly necessary to enable each to enjoy his property as in his own right. No doubt a grantor may give severally to several donees, and provide that each of the parcels of property shall go entire to the survivors in succession, so that the whole may vest in the last survivor. But there is no indication of any such intention here.
Then upon the death of Moses, the first of the donees who died, his slaves vested immediately, by virtue of limitation, in the three survivors, Theodore, Felix P. and Lucinda, as held by the Chancellor. There was no necessity of any legal representative of Moses to perfect their title, nor would such representative have had any title to the property or any thing to do with it. The survivors might at once have sued him, or any other person in whose possession the slaves had been found, at law, foy their recovery. There are some cases at law, in which it has been held that each of several tenants in common of a chattel interest, may maintain trover for his *23 own share of the common property. But this I do not think it necessary to investigate.
Then upon the death of Theodore, the property taken by him under the deed, not including that derived from his survivorship of Moses, vested in like manner in Felix P. and Lucinda. And so upon the death .of Felix, the whole of his slaves taken originally under the deed, vested in Lucinda.
I say that the legal title vested in Hucinda, but I am of opinion that the marital rights of her husband attached upon the property so as to vest the legal title in him absolutely. The well known rule of the court is, that the possession of one joint tenant is the possession of the whole, and this constitutes such a reduction into possession, as that the marital rights of the husband of a feme joint tenant will attach, though he has none of the property in his actual possession. Such are the cases of Geiger vs. The Ordinary, 1 N. & McC. and Burgess vs. Heape, 2 Hill Ch. 106. The rule is well known, that if there be a perfect legal title and the present right of possession, this is enough to vest the property in the husband; though there may be no actual, manual possession. And the husband may sue alone for the property, being thus vested with the perfect title. There can be no question, in the present case, with respect to the slaves taken originally by Felix. But there is as little doubt with respect to the other slaves which he held in common. No other person had any right or interest in them.
It is true, Jonathan Hill might have joined his wife in the action; as in the case of a bond or note given to the wife during coverture, when she is the meritorious cause of action, the husband has his election, either to sue alone or to join his wife. If he should so join her, and recover a judgment or decree in their joint names, and the husband should die before satisfaction, leaving the wife surviving, she might be entitled to the whole as survivor; according to the decision in Muse vs. Edgerton, Rice Eq. It is true, that in the present case, the husband has joined his wife; as, for some of the purposes of the suit, it was necessary for him to dobut there is no survivorship, nor can we anticipate one. There has been no judgment or decree; the parties are before the Court, standing severally on their rights, and the Court must proceed, reddendo singula singulis.
It seemed to be urged, that by standing by and seeing the property sold as the estate of Felix P. (and perhaps of Theodore) Jonathan Hill has waived his personal right to it, consenting ' that it should constitute a part of that estate, and claiming only a share of the proceeds as the chose of his wife. It is hardly necessary to remark on this. A man may adopt *24 the act of one undertaking to sell his property as a voluntary agent. He may, at his election, go against the vendor for the purchase money, or against the purchaser for the property. So he may stand by and see his property sold by another as his own, if he prefers the money to the property, and claim the proceeds. Only in this case the purchaser would have an equity to restrain the owner from following the property in his hands. It would be a very strange stretch of inference that Jonathan Hill gave up his title to, or transferred, his property, because he forbore to injure the sale by raising a question of disputed title. It follows that one-third of the slaves originally given to Moses, one-half of those so given to Theodore, and the whole of those given to Felix, or their value or proceeds, are the property of Jonathan Hill, and must be adjudged to him.
We are next to consider the case with respect to the property of which Theodore and Felix P. Bond died intestate — • no matter whether acquired from their right of survivorship or from any other source. To a distributive share of these, Jonathan I-Iill and his wife are entitled in right of the latter. The only question made as to this is, whether the wife is entitled to have a settlement of the whole or any part of this upon herself. The general doctrine is not questioned, that a wife is entitled to have a provision made for her out of her dioses in action, which are sued for in this court, as against her husband or any one claiming under him. Various questions have been heretofore made as to the circumstances, and as to the manner, in which this claim shall be allowed. It was formerly held, that only when the husband was suing in this court for the property of the wife, the court might impound the fund and allow it to accumulate until the husband himself should make proposals for a settlement. Afterwards, the husband was acted upon in invitivm, and a settlement directed; and I take it now to be the settled law, that while the fund remains under the power of the court, the court will, on a proper application in the cause, or when there is an original proceeding by the wife for the purpose, direct such settlement to be made. I had occasion to consider the subject fully in the case of Lindsay vs. Lindsay, decided at Spartanburg, from which decision there was no appeal.
But most of this it is unnecessary to consider for the purposes of the present case. The husband is in court, claiming in right of his wife; and though the claim on her behalf is only set up in the cross bill,vboth bills constitute but one suit.
Then the alleged agreement is relied on, between the administrators and Jonathan Hill, in confidence of which the *25 sureties of Jonathan Hill, parties to the suit, were induced to become sureties. The proof of the express agreement was not very distinct, nor do I think it very material. No doubt the comt would execute such an agreement as between the parties to it. Or without any agreement or understanding, the arrangement contemplated would have been carried into eifect, but for the interposition of the claims of the wife. If the administrators had actually paid over to Jonathan Hill the amount of his wife’s distributive share of the estates of Theodore and Felix Bond, this would have put the fund out of the reach of the court, and the marital rights would have become absolute. ' Or if, as ruled in the case of Gillett vs. Powell, Spears’ Eq. 142, there had been a final settlement of those estates, and the notes given up, this would have amounted to an actual payment to the husband, and the court could not interfere. The case of Heath vs. Heath seems to have been decided on the ground of actual payment to the husband. But it is said the comt regards that as done which is agreed to be done — and so it often does, with respect to those who are parties to the agreement. It is hardly necessary to say that an agreement binds none but those who are parties to it. The wife was not a party to this agreement, and this court regards her as a distinct person, entitled to vindicate her own rights. It is the misfortune of the sureties, if they have incurred a liability on the faith of an agreement, by which the parties entering into it had no right to bind a third person, in relation to the subject matter of it. There is no suggestion or surmise that any act or conduct of the wife induced the confidence by which the sureties were persuaded to incur their liability. In the case of Elibank vs. Montolien, 5 Ves. 737, the bill was by the wife against the administrator and the husband. The administrator claimed inofficially to retain the fund for a debt due him by the husband. This he might have done, if the claim of the wife had not been interposed, against any claim of the husband. It is plain that the consent of the husband to this retainer could have added nothing to the administrator’s right, as the proceedings were adverse, both to him and the administrator. Similar, and perhaps, in some respects, stronger, was the case of Carr vs. Taylor, 10 Ves. 574, where the bill was by the wife against the administrator and .the assignees of a bankrupt husband.
One claim was accidentally overlooked by the Chancellor in framing his decree. This relates to the proceeds of certain real estate (lots in Hamburg) sold, as it is understood, by the •consent of all parties, as the property of Felix P. Bond. Mrs. Lucinda Hill was entitled to a share of this. In the *26 casé of Wardlaw vs. Gray, and in other cases, it has been settled, that while the proceeds of a married woman’s real estate remain in court, they are subject to its disposition, and stand on the footing of her chose in action. The commissioner in making up his report must regard it accordingly, as part of the fund out of which provision is to be made for the wife.
It is therefore ordered and decreed, that the amount found due to Jonathan Hill by survivorship in right of his wife, under the deed of John P. Bond, be credited- on the notes in question, and the enforcement of the executions so far enjoined ; and it is further ordered, that the commissioner inquire and report what provision for Mrs. Lucinda Hill should be made out of her distributive share of the intestate estates of her deceased brothers, Theodore S. Bond and Felix P. Bond. In other respects the decrees are affirmed.